## BRUSH v. LEXINGTON–CHICAGO CO.

(Circuit Court of Appeals, Seventh Circuit. December 15, 1925.)

No. 3404.

**Patents** ⊂≈328—**1,265,735, claim 8, for hot plate to heat portion of inlet manifold of internal combustion engine, held not infringed.**

Patent No. 1,265,735, claim 8, for hot plate to heat portion of inlet manifold of internal combustion engine, *held* not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by Alanson P. Brush against the Lexington-Chicago Company. Decree for defendant, and plaintiff appeals. Affirmed.

Lynn A. Williams, of Chicago, Ill., for appellant.

Frank Parker Davis, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Suit by appellant, called plaintiff, under claim 8 of patent No. 1,265,735, application filed November 27, 1916, and issued May 14, 1918, was dismissed for want of equity.

In the old one cylinder engine, the gasoline, and the air, necessary to make the combustion mixture, were introduced directly into the one cylinder through what is now known as a carbureter. The coming of multicylinder engines necessitated means for introducing the mixture into each of the cylinders and also means for disposing of the exhaust gas from the numerous cylinders. A carbureter could be attached to the intake of each cylinder, but such a method would be cumbersome and expensive. Ultimately a cylindrical tube, with closed ends, was incorporated as a part of the engine, with openings in one side corresponding to and connecting with the intake openings in the several cylinders of the engine. There is another opening to which is attached a carbureter, the combustion mixture from which is introduced through the tube into the various cylinders of the engine.

There is another somewhat similar tube, with openings in one side, corresponding to the exhaust openings in the cylinders. Into that tube the hot exhaust gases from the cylinders pass, and are, from another opening, discharged into the outer air. The first of these tubes is called an inlet manifold, and the other an outlet manifold.

To disclose plaintiff's problem, counsel has diagnosed the difficulties of fuel feeding to the multicylinder engine as follows: (a) To maintain the proper proportion of total fuel to total air throughout the range of demand of an engine idling to the demand of the engine delivering its greatest power; (b) maintaining proper proportions of fuel and air during and immediately following sudden changes in engine speed or power; (c) attaining uniform distribution, so that every cylinder will have the same proportion of fuel and air; (d) securing vaporization of the fuel before delivering it to the engine without sacrificing engine efficiency by rarification of the whole mass of the mixture in the manifold.

It is explained that the inlet manifold, with a relatively large cross-section, is a low velocity manifold, and that in using such a manifold pools of gasoline form therein when the engine speed is low, whereby many undesirable results are consequent. It is further explained that the capacity of commercial gasoline to vaporize is on the decline, so that the tendency of gasoline, traveling in the air currents from the carbureter to the engine, is to gather on the walls of the manifold. It is further said that a high velocity manifold—that is, one with a small cross-section—meets the requirements of low demand for fuel, but is insufficient to supply the high power demands of the engine. To overcome these difficulties, plaintiff found, as he says, that a great deal of balancing of one influence against another was necessary to meet the difficulties; that is, he says that the gasoline particles in the air currents could be vaporized by heat, and thus the pools of gasoline and the consequent difficulties would be removed; but he also found that, if that was accomplished by applying the heat to the whole manifold, there would be a rarification of the whole mixture and a consequent loss of power in the engine. He says that he remedied all of those difficulties by placing a metal plate of small dimensions between the inlet and the outlet manifolds, directly opposite the point of entry of the combustion mixture from the carbureter; that the inlet manifold was of larger diameter than the air tube of the carbureter, and was water-jacketed all around, except where the metal plate of small dimensions was placed.

In the Patent Office he met with many difficulties, which resulted in the building up of claim 8 out of so many elements that it was made and is a very narrow claim:

"8. In a multicylinder internal combustion engine, the combination of a low velocity inlet manifold which discharges downwardly through valve controlled ports into the several cylinders, an exhaust gas passage into which one or more of the cylinders discharge, there being a metal plate of small dimensions which serves as a wall between said inlet manifold and gas passage, a carbureter having an air tube which is of smaller diameter than said inlet manifold, and which discharges into the same at a point directly opposite said metal plate, and in a direction substantially at right angles thereto, a fuel jet nozzle which projects into said air tube, which air tube is straight and horizontal between said nozzle and the point where the air tube discharges into the inlet manifold, and water-jacketing spaces around said inlet manifold to limit the heating of the walls thereof by conduction from said metal plate."

After rejection of numerous claims on the

references below,[1] cancellation of several claims was directed, and claim 8 was tendered. In shaping his new claims to escape those references, plaintiff said to the department: "Not one of these patents cited shows any appreciation whatever of the necessity for heating that particular small part only of the wall of the inlet manifold opposite the air tube."

Of claim 8, plaintiff said: "Claim 8 is the narrowest claim of the lot, and is limited to many characteristics of construction which, as above stated, are not to be found in the references."

Below is shown the device of the Brush patent, followed by defendant's alleged infringing device:

ble to avoid more than a slight rarification of the air in the mixing chamber, by providing that a part or the whole of the air should be moved thereto by a passage, so that it would not contact with the hot plate or point against which the gasoline was made to contact to produce the proper mixture; if Maybach and Schickel (patent No. 1,203,791, issued 20 days before plaintiff filed his application), and Jeffery in his engine, had not used the hot spot, or point, in several different ways; and if Schickel, in conveying the mixture from the carbureter to the cylinder, had not used the double elbow channel, crossed by the exhaust pipe, which made a hot spot, or point—plaintiff probably would not have so narrowed his invention, as he found

If plaintiff had received a patent broad enough to cover the conception as disclosed in his testimony, the question before us would be quite different from that here presented. If Maybach, in British letters patent No. 16,072, as far back as 1893, had not discovered that to regulate the engine it was desira-

it necessary to do by the inclusion of the many elements of claim 8.

It is found that some of the things in plaintiff's specification are very like parts of the Schickel specification, possibly from that "unconscious adaption" of which an eminent divine said he was the victim when charged with plagiarism. Claim 8 will not read upon defendant's device. Defendant's grid or hot spot, set at an angle of 45 degrees, at one side of the double elbowed channel, through which the mixture is discharged from

[1] Wilesmith, 1,151,503, August 24, 1915; Russell, 1,153,448, September 14, 1915; Sykora, 1,099,271, June 9, 1914; Jones, 1,201,055, October 10, 1916; Krastin, 695.060, March 11, 1902.

the carbureter into the inlet manifold, is not the same as a metal plate of small dimensions back of the inlet manifold, into which the mixture discharges at a point directly opposite said metal plate and substantially at right angles thereto, which air tube is straight and horizontal between the nozzle of the carbureter and the point where the air tube discharges into the inlet manifold.

Considering the state of the prior art plaintiff was not entitled to any such broad claim as would be necessary to cover defendant's device. There was no infringement, and the decree of the District Court is affirmed.